FILED LODGED RECEIVED

MAR 12 2020

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY DEPUTY

The Honorable Theresa L. Fricke

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

BRANDON CULP,

Defendant.

CASE NO. MJ20-5052

COMPLAINT for VIOLATION
18 U.S.C. § 2252(a)(4)(B), (b)(2)

BEFORE the Honorable Theresa L. Fricke, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

**COUNT ONE**

**(Possession of Child Pornography)**

Beginning on or about April 10, 2019, and continuing until no later than July 18, 2019, at Tacoma, within the Western District of Washington, and elsewhere, the defendant, BRANDON CULP, did knowingly possess matter that contained visual depictions whose production involved the use of minors engaging in sexually explicit conduct and depicts such conduct, which has been mailed and shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, and which has been produced using materials that had been mailed and shipped and

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

transported in and affecting interstate and foreign commerce by any means, including by computer, and the depictions of child pornography involved include images of prepubescent minors.

All in violation of Title 18, United State Code, Section 2252(a)(4)(B), (b)(2).

This complaint is based on the following information.

I, Nicole E. Faivre, being first duly sworn on oath, depose and say:

**INTRODUCTION**

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am currently employed as a police detective with the Tacoma Police Department, currently assigned to the Special Assaults Unit, investigating Internet Crimes Against Children. I have been a law enforcement officer for over 15 years. I have investigated and/or participated in investigations involving narcotics smuggling, human trafficking/smuggling, child pornography, and child exploitation. I have a Bachelor of Science Degree in Criminal Justice and Criminology from Metro State University in Denver, Colorado. I completed a 16-week Peace Officer's Standards Training Program in Colorado in 2015, as well as the Washington State Post Equivalency Training program at the Washington State Criminal Justice Training Center in Burien, Washington. I am currently assigned as a Task Force Officer with the Federal Bureau of Investigation's South Sound Child Exploitation Task Force, where my duties include child exploitation and child pornography investigations. I have participated in more than thirty child exploitation or child pornography investigations, and have worked extensively with other investigators on both the state and federal level involved in these types of investigations.

2. As further detailed below and based on my investigation and the investigation of other law enforcement officers, I believe that there is probable cause to conclude that BRANDON CULP has committed the offense charged in Count One of this complaint—possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

3. The facts in this complaint are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described here; and information I gained through training and experience.

4. Because I offer this complaint for the limited purpose of establishing probable cause, I list only those facts that I believe are necessary to support such a finding. I do not purport to list every fact known to me or others as a result of this investigation.

## SUMMARY OF INVESTIGATION

5. On or about July 18, 2019, the Electronic Service Provider (ESP) known as Snapchat became aware of three images depicting minors engaged in sexually explicit conduct being shared through the Snapchat Chat Service/IM Client by the Snapchat user BRANDON CULP (username bculp369). Snapchat made a report to the National Center for Missing and Exploited Children (NCMEC), which documented the complaint under CyberTip 52410056. NCMEC forwarded the CyberTip report to the Seattle Police Department's Internet Crimes Against Children unit for further investigation.

6. Additional information that Snapchat provided to NCMEC for the Snapchat user included:

- IP address of 2601:603:1c80:15ce:bced:e184:2122:5629 captured on April 10, 2019, at 00:52:35 UTC (Coordinated Universal Time);
- Mobile number of (253) 330-6850;
- Email address of ownedu333@gmail.com; and
- Date of birth of January 25, 1984.

7. Snapchat did not make clear whether the IP address captured and reported in the CyberTip on April 10, 2019, was the actual date and time that the images were

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

uploaded, or if it occurred on July 18, 2019, the date Snapchat made the CyberTip report to NCMEC. Law enforcement contacted Snapchat's Law Enforcement Support team by email for clarification on the dates and times. (See paragraph 16 below for Snapchat's response.)

8. On or about August 23, 2019, I was assigned CyberTip 52410056 for further investigative follow-up; the matter was documented under Tacoma Police Case Number 1923901290. I opened and reviewed the CyberTip and viewed the three images that were attached to it. Below are descriptions of the images.

**MD5 File aa1222073e3ee8db5ce786a32422571c:**

This image depicts a white girl with dark hair who is lying on her stomach on a bed with a dark blue or black colored comforter. The child is wearing a white headband to hold her hair back. She is completely naked.

The child is looking over her right shoulder and smiling. The smile reveals a combination of both adult and baby teeth. The child has her hips raised up and her legs are spread wide so that her rectum and vaginal area are visible in the photograph.

Based upon the child's overall size, lack of hip development, absence of breast development, and appearance of baby teeth, I estimate her age to be between 5 and 9 years old.

**MD5 File d1f923b490d1438edfbd9202116ae506:**

This image depicts a white girl with dark hair who is lying between the legs of an adult man. The girl appears to be the same girl from the first image described above. I am unable to tell if the child is completely naked, but she appears not to be wearing a shirt. She is holding the man's erect penis in her right hand and licking it as she looks directly at the camera.

The only parts of the man visible in the image are his penis and his legs, which show a fair amount of hair. Based on what is visible of the child in the photograph, I estimate her age to be between 5 and 9 years old.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**MD5 File 8799bf7111cc7915793b568b760a45f4:**

This image depicts a white girl with dark hair. She is lying on her stomach on stuffed animals. The child's head is resting on top of a large brown teddy bear, and the child's head is turned to the right, exposing the right side of her face. This appears to be the same girl from the two previously described images.

The child is completely naked, and she has her hands resting on either side of her buttocks, slightly pulling them apart to reveal her rectum and vaginal areas, which appear to be covered in ejaculate.

Based upon the child's overall size, lack of hip development, and the absence of any body hair, I estimate her age to be between 5-9 years old.

9. After viewing the image associated with the CyberTip, I used the publicly available website MaxMind (maxmind.com) to verify the suspect IP address provided by Snapchat. Through this process, I determined that the service provider was Comcast, with coordinates that geolocated to Tacoma, Washington.

10. I then used a law enforcement database to perform a records search on BRANDON CULP, with a date of birth of January 25, 1984, as provided by Snapchat in the CyberTip. I found a current sex-offender registration for CULP that listed him as a level-one registered sex offender, stemming from a 2014 conviction in Snohomish County for attempted solicitation of a minor to engage in sexual conduct.[1]

11. The address provided on CULP's sex-offender registration was 3735 ½ Fawcett Avenue in Tacoma, with a phone number of (253) 274-0209. I asked Detective Christie Yglesias (the Sex Offender Verification Detective in my office) to confirm that CULP was still currently active on the registry. Detective Yglesias confirmed this and

---

[1] CULP, a former Navy sailor, was convicted in a general court-martial after an investigation by the U.S. Naval Criminal Investigative Service and the FBI. CULP pleaded guilty to violating Uniform Code of Military Justice Article 134 for attempting to solicit a minor to engage in a commercial sex act as prohibited by 18 U.S.C. §§ 1591 and 1594, and to violating Article 92 for wrongfully using government property for unauthorized purposes. He was sentenced in 2014 to 12 years' confinement, although he did not serve that full sentence. As a result of the conviction, CULP was also dishonorably discharged from the Navy and required to register as a sex offender.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

advised me that CULP was due for address verification in February 2020. All registered sex offenders in the city of Tacoma are required to have their address verified by law enforcement. The frequency of verification checks depends on the level assigned to the sex offender. As CULP was a level-one registered sex offender, he was required to undergo annual address verification.

12. I used the publicly available website ZetX (zetx.com) to look up the phone number provided by Snapchat. I discovered it was a Sprint Mobile number registered to Q Link Wireless.

13. On December 20, 2019, I applied for and obtained a search warrant from Pierce County Superior Court Judge Elizabeth Martin for subscriber records and account content for the reported Snapchat account for Snapchat user bculp369; basic subscriber information for the associated Google email of ownedu333@gmail.com; and subscriber records for the Comcast IP 2601:603:1c80:15ce:bced:e184:2122:5629 on April 10, 2019, at 00:52:35 UTC and on July 18, 2019, at 14:43:29 UTC. All search warrants were submitted electronically.

14. Three days later, on December 23, 2019, Comcast responded that the subscriber for the above-listed IP address on July 18, 2019, at 14:43:29 UTC was BRANDON CULP, with a service address listed as 3735½ Fawcett Avenue in Tacoma and a phone number of (253) 625-8060. The start of Comcast service was listed as March 5, 2019. Comcast was unable to provide me with subscriber information for the above listed IP address for the date of April 10, 2019, at 00:52:35 UTC as it was outside of their data-retention period. But Comcast did provide me with a billing statement for the service dates of April 5 to May 4, 2019, for the address of 3735½ Fawcett Avenue. In the itemized billing receipt for those dates, CULP was billed for internet services, including internet equipment rental.

15. On December 24, 2019, I received a response from Snapchat. The response included an Excel Spreadsheet labeled "subscriber." There was no information contained within the report other than the account had been disabled on July 18, 2019. I reached out

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

once again to Snapchat to ask why they did not have any account information archived for the individual whom they had reported to NCMEC. Snapchat responded:

> Hello,
>
> Thank you for reaching out to us. Please note that we have provided all available data within our systems for the Snapchat user(s) bculp369, as listed in your legal process.
>
> Please review the below retention information for guidance as to why information may be unavailable on our systems:
>
> Regarding Snapchat content availability in general, as outlined in our Guide, typically once a Snap has been opened by all recipients, the content is permanently deleted and unavailable. If a Snap is unopened by one or more recipients, it may remain on our servers for up to 30 days. A Snap that has been posted to a user's Story can be viewed for up to 24 hours. Typically, the posted Snap is permanently deleted and unavailable 24 hours after being posted to the Story. Chat content will typically only be available if the sender or recipient has chosen to save the Chat. Memories content may be available until deleted by a user.

16. In response to my inquiry regarding the reported IP address (see paragraph 7 above), Snapchat provided the following explanation:

> Hello,
>
> Thank you for your email. Please note the Incident Date/Time is when Snap made the report to NCMEC.
>
> Additionally, the IP address information is the most recent login information. We capture the login/logout IP address, we do not capture the IP address when the content was sent.
>
> Please let us know if you have any additional questions.
>
> Regards,
>
> Snap Inc. Law Enforcement Operations

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

17. From this explanation, I believe that all Snapchat can confirm about its CyberTip to NCMEC is the user who was reportedly sending the contraband—not the specific date or time that the alleged offense occurred.

18. Google responded to my request on December 24, 2019. Google confirmed that the name on the account was BRANDON CULP; that the account creation date was December 10, 2011; and that the affiliated SMS number was (253) 625-8060, which was also the phone number listed on CULP's Comcast account. Using the publicly available website ZetX, I looked up the mobile number (253) 625-8060 and saw that it was a T-Mobile wireless number registered to BRANDON CULP.

19. On January 21, 2020, Detective Yglesias contacted CULP by phone to advise him that the detective was coming up on his address-verification check. I had asked Detective Yglesias to confirm with CULP how long he had been living at the 3735½ Fawcett Avenue address, in an effort to obtain further confirmation that he had lived there on April 10, 2019.

20. Detective Yglesias reported back to me that she was reached CULP by phone on the (253) 625-8060 mobile number and advised CULP that he was getting close to his verification check. CULP told Detective Yglesias that he knew his time was coming up, and he said he was worried that he had missed detectives who were there to talk to him. CULP explained that he is a "gamer" and that he wears headphones; he worried that he would not hear detectives knocking at the door. He asked Detective Yglesias to call him on his phone so that he could come to the door. Detective Yglesias asked CULP how long he had been living in the residence, and he said has been there for the last couple of years. He described the residence as a duplex-style unit, where he lives with a roommate. CULP said that he was not sure who lived in the duplex's other half.

21. On January 30, 2020, around 3:30 p.m., I accompanied detectives from the Tacoma Police Department's Special Assaults Unit to 3735½ Fawcett Avenue in Tacoma, where we executed a residential search warrant issued by Pierce County Superior Court Judge James R. Orlando.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

22. Detective Yglesias called CULP on his phone. CULP stepped out of the residence, came downstairs, and met Detective Welsh in the yard. Detective Welsh explained to CULP that in addition to his address verification, we also had a warrant to search his residence. Detective Welsh asked CULP if he had a cell phone, and CULP said it was upstairs in his room.

23. At this point, I introduced myself and told CULP that I would explain everything to him and answer all of his questions. I asked CULP if he would be willing to talk to Detective Welsh and me. I advised him that he was not obligated to talk to me and that he was not under arrest, but that he was being detained during the execution of the warrant. CULP said he would be willing to talk to us. I asked him if he would like to do it in my unmarked police vehicle or if he preferred to go back to the police station and be interviewed in a room. CULP said that he was fine talking in my unmarked police car.

24. CULP got into the back of my car, which has no cage. I sat in the front driver's seat of the car, and Detective Walsh sat in the rear passenger seat behind me, next to CULP. At no time during the interview was CULP handcuffed or locked in my car. Detective Welsh asked CULP if he would provide him with the passcode for his cell phone, again advising that he did not have to do so. CULP agreed to provide the passcode and told it to us. Detective Welsh gave the passcode to Sergeant Jason Greer of the Washington State Patrol so that he could do an on-scene forensic search of the device. I again told CULP that he was not obligated to talk to me, and asked him if he would be OK with my using an audio recorder to record the interview. CULP agreed.

25. I began the recording and announced all persons present. I told CULP that I was going to advise him of his rights, which he said he understood. I read CULP his rights from a prepared Tacoma Police Advisement of Rights form. I asked CULP if he understood, and he said "yes." I asked him if he wished to voluntarily answer questions, and he stated that he would, until the point that he felt that he needed a lawyer. I again reiterated to CULP that he was free to end our conversation and ask for an attorney at any time. CULP signed the rights form at 3:53 p.m.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

26.     I asked CULP if he had any idea why we were at his residence with a
search warrant. He said he did not. I told him that he had been reported to authorities
when his account bculp369 was captured uploading illegal files. CULP said that he had
had a Snapchat account in the past, but that he couldn't remember the screen name for it.
CULP said that he had not used the account for very long, as the app "confused" him, and
that he had used it only for about a year. He said that he used the account for the purposes
of talking to his friends.

27.     I brought CULP back to the topic of his Snapchat account and the reason
why he had stopped using it. CULP told me that his account had been deleted. I asked if
CULP deleted the account himself, and he said that he had not. He said that the account
was deleted because "I guess I violated some terms of service or something like that."
CULP said that Snapchat had notified him that the company deleted his account because
of a violation of Snapchat's user terms of service.

28.     I asked CULP what he had done to violate Snapchat's terms of service. He
said that he believed that his account was deleted because he bought from other Snapchat
users what he referred to as "Snapchat Premium" accounts, which women used to sell
him adult content. CULP said that the owners of such accounts post adult content on their
"Stories," and that Snapchat deletes such accounts because of their content.

29.     CULP said that he would pay these women for what he called "personal
porn," but that they were all women over age 18. I asked CULP if any of the photographs
were of girls under the age of 18, and he said that he didn't think so, although "some
were in school girl uniforms." CULP said he is into role play and pictures of adult
women who dress to look young. CULP said that a year ago when he had the Snapchat
account, he paid for "a lot" of the premium profiles, but not so much now, because he is
really into his gaming.

30.     I told CULP that Snapchat had deleted his account because images that he
had uploaded to the instant-messaging platform were deemed by the administrator to be
depictions of minors engaged in sexually explicit conduct. I told CULP that in addition to

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the account information and the images, Snapchat had also preserved the IP address associated with the offense, which came back to CULP and to his home address. CULP replied: "Okay."

31. CULP said that he could not think of the specific images that he had sent that had been flagged by the administrator. I told CULP that while we were sitting in the vehicle talking, other detectives were currently searching his residence for electronic devices, and that any devices the detectives found would be searched for depictions of minors engaged in sexually explicit conduct. I asked CULP if he understood what I was saying, and he nodded. I then asked him if he was concerned with what investigators would find on his electronic devices. CULP replied: "Is there any concern? You guys are already looking through my stuff anyway." I asked CULP directly if detectives were going to find child pornography on his phone or computers. CULP replied: "I feel like this the point where I should have a lawyer."

32. I stopped, asked CULP if he was asking for a lawyer, and told him that if he wanted to terminate the conversation until he was able to talk to an attorney, we would do so. CULP asked: "If I do request a lawyer, then what happens?" I told CULP that we would be done with the conversation and that no more questions would be asked. I again asked CULP directly if he was requesting an attorney and if he no longer wished to speak to us. Although given the opportunity to terminate the interview by stating that he wanted an attorney, CULP did not ask to end the conversation or to have an attorney present. I told CULP that we would wait until detectives were done executing the search warrant to see if they found any images consistent with child pornography, and then we would go forward from there. I told CULP that if we needed to bring back his devices for a more thorough forensic examination at a different location, we would take the devices until the exam was completed, but return them to him if they did not have anything illegal on them.

33. CULP asked me if he was going to end up going to jail today. I told him that it depended on whether or not we found illegal material on his devices. CULP asked

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

me whether he would go to jail if officers did find such material, and I told him that yes, he would be booked.

34. I again reminded CULP that he was currently not under arrest, and that he had the right to terminate our conversation and not answer any more questions. CULP said that he understood that we were at his residence because of images that he had been reported for uploading, and he said that he would "sound like a complete retard if I said someone broke into my house." Detective Welsh told CULP that the purpose of our conversation was to give him an opportunity to explain to us how he came to possess child pornography, and to try to identify others who were sending the images to him.

35. I asked CULP when he had started looking at child pornography online. He said that he didn't really know, and that he just kind of got sucked into it when he started talking to people in online groups, like Kik.[2] CULP talked about participating in treatment during his previous incarceration; he said that afterwards, he felt like he had made improvements and was doing better. But over time, he began to relapse, going back to the chat rooms and looking at child pornography online.

36. During our conversation, Detective Josh McKenzie advised me that Sergeant Greer had located images on the Samsung Galaxy S8 cell phone for which CULP had provided the passcode. I got out of the car and went upstairs to CULP's residence to look at those images. Sergeant Greer showed me four images of girls between ages 9 and 11 who were nude and posed for the camera. Two of these images are described below.

**MD5 File 210F06AECF8A1/BRANDON CULPC19C40249B2E4788C4B:**

This image depicts a white girl with long blond hair. She is completely naked and she is leaning forward towards the camera. Her vagina is fully visible in the photograph, as is her chest area. She lacks breast development, and her genital area is also

---

[2] Kik Messenger (kik.com) is an instant-messaging mobile application made by the Canadian company Kik Interactive.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

underdeveloped. There is no presence of pubic hair or pubic hair follicles. Based on the child's appearance, I estimate her age to be between 9 and 11 years old.

**MD5 File 8247DEFBA09564E525EE78EFD38E1BFE:**

This image depicts a white girl with long dark hair who is completely naked. The child appears to be lying back on a bed, propped up on her arms. She has her legs spread wide apart so that her vagina and part of her rectum is exposed in the frame.

The child lacks any breast development, and her genital area is underdeveloped. There is no presence of pubic hair or pubic hair follicles, and her frame is so slight that I am able to see her rib cage. I estimate the child's age to be about 8 to 11 years old.

37. While I was looking at the images from CULP's Samsung phone, I learned that detectives had found another cell phone propped up on CULP's bed, plugged into a wall charger—a password-protected LG Aristo cell phone.

38. Sergeant Greer was also running an on-scene forensic search of CULP's computers using osTriage version 2.5. Sergeant Greer told me that during his cursory examination for evidence of depictions of minors engaged in sexually explicit conduct, osTriage hit on 39 keywords search terms including: *11 yr*, *1yo*, *2yo*, *4yo*, *9yo*, *9yr*, *Alicia*, *angel*, *baby*, *boi*, *boy*, *brother*, *ch1*, *chil*, *child*, *daughter*, *family*, *fkk*, *k1ds*, *kdd*, *kdv*, *kdz*, *kids*, *little*, *Ish*, *Ism*, *onion*, *pdo*, *pt3*, *rbv*, *tara*, *tori*, *underage*, *viki*, *young*, *yung*, and *zpt*. Sergeant Greer noted in his report that while these keywords are not illegal by themselves, they are often used by individuals who download, upload, and/or view depictions of minors engaged in sexually explicit conduct. Sergeant Greer advised that he had not located any illegal images during the examination.

39. I returned to my police car, where CULP remained seated in the backseat with Detective Welsh. I told CULP that detectives had found images on his cell phone consistent with child pornography. CULP appeared unsurprised. We continued talking about his online activity and how he came to possess child-pornography images. CULP said that he would search for images but mostly received them from other persons whom he chatted with online. CULP said he had a Kik account but claimed not to remember his

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

username, and claimed he had not been on Kik in a while. CULP said that he would go into different Kik chat groups and talk to other people, and that they would role-play and share images.

40. I asked CULP if he had ever shared or passed on any images from his collection to people he chatted with. He said that he did and that "that's how it works." CULP clarified that people would send images to him, and he would in turn send images to them. CULP stated that he didn't look for or seek out images of children who were infant to toddler age, but he would not give an age range for the images he sought out.

41. Detective Welsh asked CULP about the LG phone found on his bed during the search. CULP said that he did not use that particular phone much and that it might not be charged. When Detective Welsh asked CULP for the phone's passcode, CULP said it was "3399." I asked CULP if that phone contained additional images of minors engaged in sexually explicit conduct, and CULP said yes.

42. When I asked CULP about why he collected images depicting minors either naked or engaged in sexually explicit conduct, CULP said he did not understand my question. I asked him specifically if he used the images to sexually gratify himself. CULP seemed put off by my question, stating that it seemed like more of a question that someone would ask him in a treatment setting. I told CULP that, in my experience, when people view these images, they generally do it because they have a sexual attraction to children, and use the images for sexual arousal and gratification. CULP did not deny that he found the photos sexually arousing but would not admit to masturbating to them.

43. CULP stated that he could get aroused without having to see the child-pornography images, but just by thinking of the fantasy and recalling the images, which is ultimately what he would do when participating in chat groups. I asked CULP when he last participated in such a chat group or looked at the child-pornography photos in his collection. CULP said it had been a couple of months.

44. I got out of the car and contacted Sergeant Greer, who told me that he had not been able to extract all the data from the second cell phone (the LG), but that on an

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

initial manual review, it appeared to contain additional photos and videos consistent with child pornography. One folder on the phone, labeled "Kik Videos," contained 175 videos; in some, according to Sergeant Greer, you could see just on an initial glance that the videos appeared to depict minors either nude or engaging in sex acts. Investigators brought the LG phone back to the Tacoma Police Department for a forensic examination and extraction.

45. Additional items seized from CULP's residence and transported back to the Tacoma Police Department included CULP's computer tower, a laptop computer, a ZTE cell phone, and the Samsung Galaxy phone that Sergeant Greer had extracted on scene. Of the evidence, everything except the Samsung phone was secured in the Digital Forensics Laboratory pending forensic examination and extraction; the Samsung Galaxy S8 was transported back to the Tacoma Police Department and booked into property and evidence by Detective McKenzie. Copies of the search warrant and return of service were photographed and left on a table at CULP's residence.

46. I then told CULP he would be placed under arrest and transported to the Pierce County Jail on charges of second-degree possession of depictions of minors engaged in sexually explicit conduct.

47. I gave Detective Reda a copy of the search warrant and the additional devices (the LG Aristo Cell Phone, Asus Desktop Computer, an ACER Laptop Computer, a black ZTE cell phone, and a Verizon Samsung flip phone) for off-site forensic examination and extraction. I received a final report documenting the final results of the forensic examination and extractions completed on the digital devices seized from CULP's residence. In his final report, Detective Reda noted that in the review of the LG Aristo, he found the device user listed as "JOSH ALLEN," with an associated email address of joshallen369369@gmail.com. Detective Reda noted that the

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

LG Aristo phone is manufactured in Vietnam, based on the manufacturer's stamp on the inside of the phone.[3]

48. The examination of the LG revealed numerous applications, including Kik Messenger (discussed above), MEGA (a cloud-storage application), Dropbox, Hangouts, Google, Facebook, and TextNow. The most commonly used application appeared to be Kik. A check of the "webhistory" showed limited web history and showed that the most common websites used on the phone were Dropbox, TextNow, Google, and MEGA. Detective Reda told me that he thought the limited web history may have resulted from CULP's using an incognito-browsing function.

49. A further review of the images on the LG phone found over 10,000 files, mostly pornographic with some duplicates. While some of the material displayed obvious adults, many of the images were nude depictions of children under 12 years old, including depictions of toddlers and infants.

50. The video section of the LG's memory contained over 1,000 files, also with some duplicates. This section contained videos of adults engaged in sexual activity, but mostly contained videos of very small children, toddlers, and infants engaged in sexual activity. While a few of the downloaded filepaths point to MEGA, it appears majority of these files were downloaded through the Kik application. Detective Reda advised that further research may be required to determine how these files were downloaded to the LG phone.

51. Detective Reda managed to convert the image and video files into Griffeye format so that I could easily load them into the sorting software to identify images and videos depicting minors engaged in sexually explicit conduct.

52. Griffeye is a technology company that makes forensic software, including software used to categorize and identify images and video files of children engaged in

---

[3] I believe that CULP's Samsung phone was manufactured in China because I went to the property room and removed the back of the phone to get the manufacturer's information.

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

sexually explicit conduct.

53. Using this software, I imported 6,395 total media files into the program, and categorized 871 files as Child Abuse Material; 853 files as being age difficult (meaning that some of the females presented with more advanced breast and genital development so that I could not definitively determine they were under age 18) or as depicting child erotica; and 80 comparison files that show selfies of BRANDON CULP's face in the photographs.

54. Of the 871 files depicting minors engaged in sexually explicit activity, I located several videos depicting infant children being sexually abused. Three of the videos are described below.

**MD5 File 1B9E773863BD334055F68F356620CFF0:**

This is a video file that is approximately 28 seconds in length and depicts a white infant girl and a white adult man. The infant is completely naked and is positioned on her stomach on a bed. A white metal bed frame can be seen against the wall, and a Cabbage Patch Doll is leaning against it.

The man is naked. He uses his left hand to simultaneously hold the infant down while spreading her rectum open. He then begins to insert his penis into the infant's rectum using his right hand. As he inserts his penis deeper into the child's rectum, the baby can be heard crying. The video ends.

Based on what is visible of the infant, her small size, and her small vaginal area, I estimate her age to be between 6 and 9 months.

**MD5 File A0AE436E492B10DAE95AA651E0E2DE56:**

This video file depicts a white infant girl being anally penetrated by a white adult man. The infant is naked except for a red T-shirt with white markings on it.

The video appears to be taken by the man looking down. Throughout the entirety of the 43-second video, the infant is crying hysterically, in obvious distress. At one point, the infant gasp between cries as if she is struggling to breathe.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The man's left hand comes into the frame at one point. It looks like he is wearing a long-sleeved gray shirt and that he has a tattoo on his left hand. He is holding both of the infant's legs in his hand to prevent her from kicking. The man is fully inserting his entire penis into the infant's rectum with such force that you are able to hear skin to skin contact. The video then ends.

Based on what is visible of the infant, her small size, and small vaginal area, I estimate her age to be between 6 and 9 months.

**MD5 file 6130A8407650A182BE7454D9A4127B10:**

This video file depicts a white infant boy who is completely naked and an adult white man. The video is about 1 minute and 21 seconds long.

The infant rests on a "boppy" style nursing pillow on top of a couch, sucking his left hand. The man in the video is manually manipulating his penis so that it becomes erect. He then begins to rub it against the infant's penis. The man can be heard talking to the baby, but I am unable to make out what he is saying.

The man then forces his fully erect penis into the infant's mouth and moves it in and out. The infant begins to turn red in the face; his arms start to thrash, clearly indicating that he is not able to breath. The man continues to talk to the baby and move his penis in and out of the baby's mouth until the man begins to ejaculate. The man then removes his penis from the infant's mouth, and the infant is immediately heard crying. The video ends as the male ejaculates on the infant's face.

Based on the infant's size, I estimate his age to be no more than 3 months old.



UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## CONCLUSION

Based on the above facts, I believe that there is probable cause to conclude that the defendant, BRANDON CULP, committed the offenses charged in this complaint.

Pursuant to Federal Rule of Criminal Procedure 4.1, this complaint is presented by reliable electronic means.

NICOLE E. FAIVRE, Complainant
Task Force Officer
Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 12th day of March, 2020. Based on the complaint and sworn affidavit, the Court finds that there is probable cause to believe that the defendant committed the offenses set forth in the complaint.

DATED this 12th day of March, 2020.

THERESA L. FRICKE
United States Magistrate Judge

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800